UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID HACKEL, Individually and On Behalf of All Others Similarly Situated, | ) ) ) Case No. ) |
| Plaintiff, | ) ) |
| v. | ) CLASS ACTION COMPLAINT ) ) |
| AVEO PHARMACEUTICALS, INC., MICHAEL BAILEY, MATTHEW DALLAS, and KEITH S. EHRLICH, | ) JURY TRIAL DEMANDED ) ) ) ) |
| Defendants. | ) ) |

Plaintiff David Hackel ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding AVEO Pharmaceuticals, Inc. ("AVEO" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.       This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired AVEO securities between

August 4, 2016 through January 31, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      AVEO is a biopharmaceutical company incorporated in 2001.  The Company is based in Cambridge, Massachusetts and develops and commercializes a portfolio of targeted medicines for oncology and other areas of unmet medical need.  AVEO was formerly known as "GenPath Pharmaceuticals, Inc." and changed its name to "AVEO Pharmaceuticals, Inc." in March 2005.

3.      AVEO markets and develops its lead candidate drug, tivozanib (registered under the trademarked name FOTIVDA), which is an oral, once-daily medication for treating renal cell carcinoma ("RCC").  In June 2013, tivozanib, was deemed insufficient for approval by the U.S. Food & Drug Administration ("FDA"), over reported concerns regarding the negative trend in overall survival ("OS") in the Company's first pivotal phase 3 trial (the "TIVO-1" study).

4.      On May 26, 2016, AVEO announced the dosing of its first patient in the "TIVO-3 trial," the Company's Phase 3 randomized, controlled, multi-center, open-label study to compare tivozanib to sorafenib in 351 subjects with highly refractory advanced or metastatic.  According to AVEO, the TIVO-3 trial was designed to address the overall survival concerns from the TIVO-1 trial presented in June 2013.

5.      On November 5, 2018, AVEO issued a press release announcing that tivozanib had successfully "met its primary endpoint of demonstrating a statistically significant benefit in progression-free survival (PFS)" through the TIVO-3 trial (the "November 5 Press Release").

According to the November 5 Press Release, AVEO planned to submit a New Drug Application ("NDA") to the FDA in approximately six months based on results from the TIVO-3 trial, together with the previously completed Phase 3 TIVO-1 trial of tivozanib in the first line treatment of RCC.

6.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) the TIVO-3 trial was inadequately designed to address the OS concerns regarding AVEO's lead candidate drug, tivozanib, from the TIVO-1 trial presented in the June 2013; (ii) tivozanib had insufficient survival data to meet FDA approval following its initial 2013 rejection; (iii) this lack of sufficient survival data would put tivozanib at greater risk of delayed FDA approval; and (iv) as a result, AVEO's public statements were materially false and misleading at all relevant times.

7.      On January 31, 2019, *Boston Business Journal* reported that AVEO would not submit its tivozanib application for FDA approval "due to a recommendation from the agency gather more late-stage testing results.  Specifically, the FDA is asking for additional survival data, echoing concerns that led to the agency's rejection of the same drug in 2013."

8.      On this news, AVEO's stock price dropped $1.07 per share, or over 60%, to close at $0.70 per share on January 31, 2019.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

12.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b).  AVEO securities trade on the Nasdaq stock exchange ("NASDAQ"), located within this Judicial District.

13.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired AVEO securities at artificially inflated prices during the Class Period and were damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant AVEO is a Delaware corporation with its principal executive offices located at One Broadway, 14th Floor, Cambridge, Massachusetts 02142.  AVEO's shares trade in an efficient market on the NASDAQ under the ticker symbol "AVEO".

16.     Defendant Michael Bailey ("Bailey") has served as the Chief Executive Officer ("CEO") and President of AVEO at all relevant times since January 7, 2015, and served as the

Company's Secretary.  Bailey served as the Principal Financial Officer of AVEO until April 2015.

17.     Defendant Matthew Dallas ("Dallas") has served as the Chief Financial Officer ("CFO") of AVEO at all relevant times since June 1, 2017.

18.     Defendant Keith S. Ehrlich ("Ehrlich") has served as the CFO of AVEO at all relevant times from April 22, 2015 to July 1, 2017.

19.     The Defendants referenced above in ¶¶ 16-18 are sometimes referred to herein collectively as the "Individual Defendants."

20.     The Individual Defendants possessed the power and authority to control the contents of AVEO' SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

21.     AVEO is a biopharmaceutical company incorporated in 2001.  The Company is based in Cambridge, Massachusetts and develops and commercializes a portfolio of targeted medicines for oncology and other areas of unmet medical need.  AVEO was formerly known as

"GenPath Pharmaceuticals, Inc." and changed its name to "AVEO Pharmaceuticals, Inc." in March 2005.

22.     AVEO markets and develops its lead candidate drug, tivozanib (registered under the trademarked name FOTIVDA), which is an oral, once-daily medication for treating RCC.  In 2013, tivozanib, was deemed insufficient for approval by the FDA.   According to *Boston Business Journal*:

> Federal regulators pointed to a lack of clarity in the long-term outcomes in Aveo's initial 517-patient trial when the company first approached the FDA in 2013.  The drug showed it could help halt the growth of kidney cancer about three months longer than another kidney cancer drug, Nexavar, but that patients who received only tivozanib actually died a little sooner than others.

23.     On May 26, 2016, AVEO announced the dosing of its first patient in the "TIVO-3 trial," the Company's Phase 3 randomized, controlled, multi-center, open-label study to compare tivozanib to sorafenib in 351 subjects with highly refractory advanced or metastatic.  According to AVEO, the TIVO-3 trial was designed to address the OS concerns from the TIVO-1 trial presented in the June 2013.

24.     On November 5, 2018, AVEO announced that tivozanib had successfully "met its primary endpoint of demonstrating a statistically significant benefit in progression-free survival (PFS)" through the TIVO-3 trial.  According to the November 5 Press Release, AVEO planned to submit an NDA to the FDA in approximately six months based on results from the TIVO-3 trial, together with the previously completed Phase 3 TIVO-1 trial of tivozanib in the first line treatment of RCC.

### Materially False and Misleading Statements Issued During the Class Period

25.     The Class Period begins on August 4, 2016, when AVEO filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the

quarterly period ended June 30, 2016 (the "Q2 2016 10-Q").  The Q2 2016 10-Q touted that the

TIVO-3 trial was designed to rectify the earlier shortcomings of the TIVO-1 trial, the 2013

results of which had failed to satisfy the FDA that tivozanib was ready for approval due to OS

concerns:

> In May 2016, we initiated enrollment and treatment of patients in our new phase 3 trial of tivozanib in the third-line treatment of patients with refractory RCC. ***The TIVO-3 trial was designed to address the OS concerns from the TIVO-1 trial presented in the June 2013 complete response letter from the FDA and to support a request for regulatory approval of tivozanib in the United States*** as a third-line treatment and as a first-line treatment. ***Our study design, which we reviewed with the FDA***, provides for a randomized, controlled, multi-center, open-label phase 3 study of approximately 322 subjects randomized 1:1 to receive either tivozanib or sorafenib. Subjects enrolled in the study may include those who have received prior immunotherapy, including immune checkpoint (PD-1) inhibitors, reflecting a potentially evolving treatment landscape. ***The primary objective of the study is to show improved [progression-free survival, or] PFS, and secondary endpoints include OS and objective response rate, or ORR, as well as safety and pharmacokinetic endpoints***. The study's sites are located in North America and the European Union.  The study does not include a crossover. Following the initiation of enrollment, we continue to expect to report top line data from the study in the first quarter of 2018.

(Emphasis added).  The above statement also assured investors that AVEO's "study design . . .

[was] reviewed with the FDA."

26.     The Q2 2016 10-Q also contained merely generic, boiler plate representations

concerning the risk that tivozanib and its clinical trials might prove unsuccessful, stating, in

relevant part:

> The success of tivozanib will depend on several factors, including the following:
>
> - our ability to secure the substantial additional working capital required to initiate and conduct our planned clinical trials of tivozanib, including the TIVO-3 trial and the planned phase 1/2 PD-1 combination trial in RCC;
> - initiation and successful enrollment and completion of clinical trials; [and]
> - a safety, tolerability and efficacy profile that is satisfactory to the U.S. Food and Drug Administration, or FDA, or any comparable foreign regulatory authority for marketing approval[.]

* * *

Many of these factors are beyond our control, including clinical development, the regulatory submission process, potential threats to our intellectual property rights and the manufacturing, marketing and sales efforts of our collaborators. If we are unable to develop, receive marketing approval for and successfully commercialize tivozanib on our own or with our collaborators, or experience delays as a result of any of these factors or otherwise, our business could be substantially harmed.

27.     Appended as exhibits to the Q2 2016 10-Q were signed certifications by Defendants Bailey and Ehrlich pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), certifying that "[t]he [Q2 2016 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "[t]he information contained in the [Q2 2016 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

28.     On March 22, 2017, AVEO filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the fiscal year ended December 31, 2016 (the "2016 10-K"). As with the Company's Q2 2016 10-Q, the 2016 10-K touted that the TIVO-3 trial was designed to rectify the earlier shortcomings of the TIVO-1 trial results in 2013, which failed to satisfy the FDA that tivozanib was ready for FDA approval:

In May 2016, we initiated enrollment and treatment of patients in a phase 3 trial of tivozanib in the third-line treatment of patients with refractory RCC, which we refer to as the TIVO-3 trial. *The TIVO-3 clinical trial was designed to address the OS concerns from the TIVO-1 trial presented in the June 2013 complete response letter from the FDA and to support a request for regulatory approval of tivozanib in the United States* as a third-line treatment and as a first-line treatment for RCC. *Our trial design, which we reviewed with the FDA*, provides for a randomized, controlled, multi-center, open-label phase 3 clinical trial of approximately 322 subjects randomized 1:1 to receive either tivozanib or sorafenib. Subjects enrolled in the trial must have failed two systemic therapies one of which must have been a VEGF TKI. Patients may have received prior immunotherapy, including immune checkpoint (PD-1) inhibitors, reflecting a potentially evolving treatment landscape. *The primary objective of the TIVO-3 trial is to show improved PFS, and secondary endpoints include OS, safety and objective response rate, or ORR* . . . . *The TIVO-3 trial passed an initial safety*

8

*data assessment in February 2017.* We expect a pre-planned interim futility analysis to occur mid-year 2017.

(Emphasis added).  The above statement also assured investors that AVEO's "trial design . . . [was] reviewed with the FDA" and touted that "[t]he TIVO-3 trial passed an initial safety data assessment in February 2017."

29.    The 2016 10-K also contained the same merely generic, boiler plate representations as the Q2 2016 10-Q regarding risks that tivozanib and its clinical trials might prove unsuccessful, including:  (i) the Company's "ability to secure the substantial additional capital required to complete our clinical trials of tivozanib, including the TIVO-3 trial and the TiNivo trial;" (ii) "successful enrollment and completion of clinical trials;" and (iii) "a safety, tolerability and efficacy profile that is satisfactory to the FDA, EMA or any other comparable foreign regulatory authority for marketing approval[.]"

30.    Appended as exhibits to the 2016 10-K were signed SOX certifications by Defendants Bailey and Ehrlich certifying that "[t]he [2016 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "[t]he information contained in the [2016 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

31.    On March 13, 2018, AVEO filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the fiscal year ended December 31, 2017 (the "2017 10-K").  As with the Company's previous filings referenced above, the 2017 10-K represented that the TIVO-3 trial was designed to rectify the earlier shortcomings of the TIVO-1 trial results in 2013, which failed to satisfy the FDA that tivozanib was ready for FDA approval:

In May 2016, we initiated enrollment and treatment of patients in a phase 3 trial of tivozanib in the third-line treatment of patients with aRCC, which we refer to as the TIVO-3 trial. ***The TIVO-3 clinical trial was designed to address the FDA's concern about the negative OS trend expressed in the complete response letter from June 2013. Our intention is to seek regulatory approval in the United States for tivozanib based on results from the TIVO-3 study as a third-line treatment for RCC.*** In addition, we plan to seek approval in the first-line using these data together with the results from the TIVO-1 trial. ***Our TIVO-3 trial design, which we reviewed with the FDA***, provided for a randomized, controlled, multi-center, open-label phase 3 clinical trial randomized 1:1 to receive either tivozanib or sorafenib. Subjects enrolled in the trial must have failed two systemic therapies, including a VEGFR TKI. Patients may have received prior immunotherapy, including immune checkpoint (PD-1) inhibitors, reflecting the evolving treatment landscape. ***The primary objective of the TIVO-3 trial is to show improved PFS. Secondary endpoints include OS, safety and ORR.***

(Emphasis added).  The above statement also assured investors that AVEO's "trial design . . . [was] reviewed with the FDA."

32.     The 2017 10-K touted safety results from the TIVO-3 trial and stated that, based on the results of a futility assessment "reviewed by an independent statistician," AVEO had decided to continue the trial without any modification:

The TIVO-3 trial has enrolled a total of 351 patients and ***has passed three semi-annual safety data assessments***. ***In October 2017, we successfully passed a pre-planned interim futility analysis for TIVO-3. Based on the results of the futility analysis, which were reviewed by an independent statistician, the trial continued as planned without modification.*** We expect to receive and report topline data from the TIVO-3 trial (including PFS and preliminary OS data) in the second quarter of 2018, approximately 8-10 weeks after the 255th event (progression determined by an independent radiology committee or death) is reported.

(Emphasis added).

33.     The 2017 10-K also contained the same merely generic, boiler plate representations as the Q2 2016 10-Q and 2016 10-K regarding the risk that tivozanib and its clinical trials might prove unsuccessful, including:  (i) the Company's "ability to secure the substantial additional capital required to complete our clinical trials of tivozanib, including the

10

TIVO-3 trial and the TiNivo trial;" (ii) "successful enrollment and completion of clinical trials;" and (iii) "a safety, tolerability and efficacy profile that is satisfactory to the FDA, EMA or any other comparable foreign regulatory authority for marketing approval[.]"

34.     Appended as exhibits to the 2017 10-K were signed SOX certifications by Defendants Bailey and Dallas certifying that "[t]he [2017 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "[t]he information contained in the [2017 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

35.     On November 5, 2018, AVEO announced that tivozanib had successfully "met its primary endpoint of demonstrating a statistically significant benefit in progression-free survival (PFS)" through the TIVO-3 trial.  According to the November 5 Press Release, AVEO planned to submit an NDA to the FDA in approximately six months based on results from the TIVO-3 trial, together with the previously completed Phase 3 TIVO-1 trial of tivozanib in the first line treatment of RCC.

36.     Notably, the November 5 Press Release downplayed the significance of tivozanib's OS, which AVEO repeatedly asserted in its SEC filings "[t]he TIVO-3 clinical trial was designed to address."  The November 5 Press release stated, in relevant part:

> The analysis of the secondary endpoint of overall survival (OS) was not mature at the time of the final PFS analysis, with only 46% of potential OS events having been reported. ***At the time of the preliminary OS analysis, no statistically significant difference in OS was observed*** (HR=1.06, p=0.69). The final survival analysis per protocol is planned for August 2019, two years following the last patient enrolled. Detailed results of the trial will also be submitted for presentation at an upcoming major medical meeting. ***The secondary endpoint of overall response rate for patients receiving tivozanib was 18% compared to 8% for patients receiving sorafenib*** (p=0.02).
>
> ***Tivozanib was generally well-tolerated***, with grade 3 or higher adverse events consistent with those observed in previous tivozanib trials. Infrequent but severe

adverse events reported in greater number in the tivozanib arm were thrombotic events similar to those observed in previous tivozanib studies. The most common adverse event in patients receiving tivozanib was hypertension, an adverse event known to reflect effective VEGF pathway inhibition.

**Based on results from the TIVO-3 trial**, together with the previously completed [and unsuccessful] Phase 3 TIVO-1 trial of tivozanib in the first line treatment of RCC, **the Company's goal is to submit a New Drug Application (NDA) to the U.S. Food and Drug Administration (FDA) in approximately six months**.

(Emphasis added). The November 5 Press Release thus signaled to investors that, based on the new results from the TIVO-3 trial, and as taken together with the previous TIVO-1 trial's unacceptable results, AVEO was confident enough to file a new NDA with the FDA to seek approval of its lead drug candidate, tivozanib, *within six months*.

37. The statements referenced in ¶¶25-36 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the TIVO-3 trial was inadequately designed to address the OS concerns regarding AVEO's lead candidate drug, tivozanib, from the TIVO-1 trial presented back in the June 2013; (ii) tivozanib had insufficient survival data to meet FDA approval following its initial 2013 rejection by the FDA; (iii) this lack of sufficient survival data would put tivozanib at greater risk of delayed FDA approval; and (iv) as a result, AVEO's public statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

38. On January 31, 2019, *Boston Business Journal* reported that AVEO "won't submit its application [for tivozanib] for FDA approval due to a recommendation from the

agency gather more late-stage testing results.  Specifically, the FDA is asking for additional survival data, echoing concerns that led to the agency's rejection of the same drug in 2013."

39.     On the same day, AVEO issued a timing update for tivozanib, stating, in relevant part:

> [AVEO] has accepted the recommendation of the U.S. Food and Drug Administration (FDA) not to submit a New Drug Application (NDA) for tivozanib (FOTIVDA®) with the preliminary overall survival (OS) results from the Phase 3 TIVO-3 trial. ***The FDA indicated that these preliminary OS results do not allay their concerns about the potential detriment in OS outlined in the complete response letter dated June 6, 2013.*** The Company now plans to make a NDA filing decision following the availability of more mature OS results.

(Emphasis added).

40.     The timing update proffered excuses for the failed TIVO-3 trial, pointing back to technical information disclosed in the November 5 Press Release:

> ***As disclosed in November 2018, a preliminary analysis of the secondary endpoint of OS in the TIVO-3 trial showed a hazard ratio (HR) > 1.*** The Company previously planned to conduct the final OS analysis in August 2019. ***Due to the longer-than-expected median OS in both arms, and following discussions with the FDA, the Company plans to designate the August 2019 OS analysis as interim.*** Results of this analysis are expected to be reported in the fourth quarter.
>
> ***Since initially conducting the preliminary analysis of the OS endpoint in November 2018, the Company has identified the survival status of a group of patients that were previously lost to follow up. With the identification of these OS events, the October 4, 2018 preliminary OS HR was revised from 1.06 to 1.12. The Company has not performed any OS analyses beyond the preliminary October 4, 2018 data cut-off date.***

(Emphasis added).

41.     On this news, AVEO's stock price dropped $1.07 per share, or over 60%, to close at $0.70 per share on January 31, 2019.

42.     On February 1, 2019, Zacks Equity Research published an article discussing the long-term implications of AVEO's delayed NDA for tivozanib, stating, in relevant part:

Earlier, *AVEO had planned a final analysis of OS in August 2019*. However, *a longer-than-expected median OS and discussion with the FDA led the company to designate the analysis in August as interim*. Data from this interim analysis will be available in the fourth quarter of 2019.

Moreover, the company stated that *a group of patients were not included during preliminary OS analysis in November*. However*, including data from the group increased the hazard ratio or failure rate for OS analysis for the candidate by more than 5%*.

(Emphasis added).  As the article noted, not only did the TIVO-3 trial have a longer-than-expected OS (which the trial was purportedly designed to address), but when the November 5 Press Release presented successful results from the TVIO-3 trial to investors, AVEO had apparently failed to include a whole group of patients that, if included, would have increased the OS hazard ratio by **over 5%.**

43.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

44.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired AVEO securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

45.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, AVEO securities were actively traded on the

14

NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by AVEO or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

47.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

48.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of AVEO;

- whether the Individual Defendants caused AVEO to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of AVEO securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

49.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

50.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- AVEO  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold AVEO securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

51.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

52.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State*

*of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

53.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

55.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of AVEO securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire AVEO securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

56.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for AVEO securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about AVEO's finances and business prospects.

57.     By virtue of their positions at AVEO, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

58.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of AVEO, the Individual Defendants had knowledge of the details of AVEO's internal affairs.

59.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of

18

AVEO.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to AVEO's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of AVEO securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning AVEO's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired AVEO securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

60.     During the Class Period, AVEO securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of AVEO securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of AVEO securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of AVEO securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

61. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

63. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64. During the Class Period, the Individual Defendants participated in the operation and management of AVEO, and conducted and participated, directly and indirectly, in the conduct of AVEO's business affairs. Because of their senior positions, they knew the adverse non-public information about AVEO's misstatement of income and expenses and false financial statements.

65. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to AVEO's financial condition and results of operations, and to correct promptly any public statements issued by AVEO which had become materially false or misleading.

66. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press

releases and public filings which AVEO disseminated in the marketplace during the Class Period concerning AVEO's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause AVEO to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of AVEO within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of AVEO securities.

67.    Each of the Individual Defendants, therefore, acted as a controlling person of AVEO. By reason of their senior management positions and/or being directors of AVEO, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, AVEO to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of AVEO and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

68.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by AVEO.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 25, 2019                          Respectfully submitted,

                                                  POMERANTZ LLP

                                                  */s/ Jeremy A. Lieberman*
                                                  Jeremy A. Lieberman
                                                  J. Alexander Hood II
                                                  Jonathan D. Lindenfeld
                                                  600 Third Avenue, 20th Floor
                                                  New York, New York 10016
                                                  Telephone: (212) 661-1100
                                                  Facsimile: (212) 661-8665
                                                  Email: jalieberman@pomlaw.com
                                                  ahood@pomlaw.com
                                                  jlindenfeld@pomlaw.com

                                                  POMERANTZ LLP
                                                  Patrick V. Dahlstrom
                                                  10 South La Salle Street, Suite 3505
                                                  Chicago, Illinois 60603
                                                  Telephone:  (312) 377-1181
                                                  Facsimile:   (312) 377-1184
                                                  Email:  pdahlstrom@pomlaw.com

                                                  BRONSTEIN, GEWIRTZ
                                                  & GROSSMAN, LLC
                                                  Peretz Bronstein
                                                  60 East 42nd Street, Suite 4600
                                                  New York, NY 10165
                                                  Telephone: (212) 697-6484
                                                  Facsimile (212) 697-7296
                                                  Email:  peretz@bgandg.com

                                                  *Attorneys for Plaintiff*

**Submission Date**

2019-02-01 07:51:45

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.    I  make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against AVEO Pharmaceuticals, Inc. ("AVEO" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire AVEO securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired AVEO securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in AVEO securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.

## Name

**Print Name**

David Hackel

## Acquisitions

**Configurable list (if none enter none)**

| Date Acquired | Number of Shares Acquired | Price per Share Acquired |
|---|---|---|
| 2/6/2018 | 192 | 2.9302 |
| 3/2/2018 | 106 | 2.8 |
| 3/16/2018 | 185 | 2.6 |
| 4/2/2018 | 434 | 2.8614 |
| 6/28/2018 | 240 | 2.15 |
| 10/11/2018 | 650 | 2.72 |

| 10/11/2018 | 350 | 2.745 |
| 10/15/2018 | 300 | 2.5847 |
| 10/19/2018 | 200 | 2.505 |
| 10/22/2018 | 300 | 2.235 |
| 11/06/2018 | 400 | 2.5 |

## Sales

**Configurable list (if none enter none)**

| Date Sold | Number of Shares Sold | Price per Share Sold |
|---|---|---|
| 3/21/2018 | 483 | 3.0052 |
| 4/18/2018 | 35 | 2.8155 |
| 8/27/2018 | 439 | 2.65 |
| 9/5/2018 | 200 | 2.92 |
| 11/02/2018 | 300 | 2.82 |
| 1/15/2019 | 50 | 1.9959 |
| 1/16/2019 | 50 | 1.98 |

## Documents & Message

**Upload your brokerage statements showing your individual purchase and sale orders.**

(redacted)

**Signature**



**Full Name**

David Hackel

**AVEO Pharmaceuticals, Inc. (AVEO)**                                          **Hackel, David**

**List of Purchases and Sales**

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| 2/6/2018 | Purchase | 192 | $2.9302 |
| 3/2/2018 | Purchase | 106 | $2.8000 |
| 3/16/2018 | Purchase | 185 | $2.6000 |
| 4/2/2018 | Purchase | 434 | $2.8614 |
| 6/28/2018 | Purchase | 240 | $2.1500 |
| 10/11/2018 | Purchase | 650 | $2.7200 |
| 10/11/2018 | Purchase | 350 | $2.7450 |
| 10/15/2018 | Purchase | 300 | $2.5847 |
| 10/19/2018 | Purchase | 200 | $2.5050 |
| 10/22/2018 | Purchase | 300 | $2.2350 |
| 11/6/2018 | Purchase | 400 | $2.5000 |
| 3/21/2018 | Sale | 483 | $3.0052 |
| 4/18/2018 | Sale | 35 | $2.8155 |
| 8/27/2018 | Sale | 439 | $2.6500 |
| 9/5/2018 | Sale | 200 | $2.9200 |
| 11/2/2018 | Sale | 300 | $2.8200 |
| 1/15/2019 | Sale | 50 | $1.9959 |
| 1/16/2019 | Sale | 50 | $1.9800 |